

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| In re TROY HARLEY HUGH NIELSEN and DIANNA KATHLEEN NIELSEN, | Case No. 14-00974 |
| | Chapter 7 |
| Debtors. | |
| TROY HARLEY HUGH NIELSEN and DIANNA KATHLEEN NIELSEN, | Adv. Pro. No. 14-90044 |
| Plaintiffs, | |
| vs. | |
| DANE FIELD, as Trustee, et al., | Re: Docket No. 37, 40, 46, 59 |
| Defendants. | |

## MEMORANDUM OF DECISION ON
## MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

The debtors in this chapter 7 case are the settlors, lifetime beneficiaries, and

trustees of a trust which they may revoke or amend at any time. They contributed

real property to the trust. They live in one of the two buildings on the property.

They have claimed a homestead exemption in the property and, in this adversary

proceeding, seek to avoid certain judicial liens on the property. For the reasons

stated below, I hold that such liens are avoidable under Bankruptcy Code § 522(f),

but factual questions remain about the extent to which the liens are avoidable.

## I.    JURISDICTION AND VENUE.

The bankruptcy court has personal and subject matter jurisdiction. It also

has statutory and constitutional authority to enter a final judgment. Venue is

proper in this district.

## II.    BACKGROUND.

Plaintiffs Troy and Dianna Nielsen are the settlors, trustees, and "primary

beneficiaries" of the Troy and Dianna Nielsen Living Trust, dated May 9, 2005

(the "Nielsen Trust"). The Nielsens have unfettered power to revoke or amend the

trust.

The Nielsen Trust holds title to real property located at 442 Kupulau Drive in

Kihei, Maui. There are two dwelling units on the property. The Nielsens reside in

the smaller building and operate a bed and breakfast inn in the other.

The property is subject to two mortgage liens securing debts totaling about

$932,953.93.  In addition, Dane Field, as bankruptcy trustee of The Mortgage

Store, Inc. (the "TMS Trustee"), asserts a lien on the property based on a recorded

2

judgment against the Nielsens of $329,880.11 and a writ of attachment. OneWest Bank also asserts a judgment lien against the property of $770,091.56.

Less than ninety days after the TMS Trustee and OneWest Bank recorded their liens, the Nielsens filed a chapter 11 petition. Later, they converted their case to chapter 7.

The Nielsens' complaint in this adversary proceeding consists of four counts. The first two counts seek avoidance of the TMS Trustee's and OneWest Bank's liens as preferential transfers. The third and fourth counts seek avoidance of the same liens under section 522(f) of the Bankruptcy Code.

The TMS Trustee and OneWest argue that the court should dismiss the complaint or, alternatively, enter summary judgment in their favor.[1] They argue that the property is not property of the Nielsens' bankruptcy estate, so neither the preference avoidance power nor section 522(f) applies to it. They also argue that debtors in a chapter 7 case, such as the Nielsens, cannot invoke the power to avoid preferences.

The Nielsens seek summary judgment in their favor on the third and fourth counts of the complaint.[2] The TMS Trustee has moved the court to bifurcate that motion, i.e., to decide whether the property is property of the bankruptcy estate

_____

[1] Dkt. 37, 59.

[2] Dkt. 40.

3

before deciding the other issues presented.[3] OneWest joined in the TMS Trustee's bifurcation motion.[4]

## III. STANDARD.

The court may dismiss a complaint for "failure to state a claim upon which relief can be granted."[5] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[6] A formulaic recitation of the elements of a cause of action does not suffice.[7] Only if a complaint states a plausible claim for relief will it survive a motion to dismiss.[8]

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[9] Summary judgment should be granted against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's

---

[3] Dkt. 46.

[4] Dkt. 51.

[5] Fed. R. Civ. P. 12(b)(6).

[6] *Compton v. Countrywide Financial Corp.*, 761 F.3d 1046, 1054 (9th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[7] *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[8] *Iqbal*, 556 U.S. at 678.

[9] Fed. R. Civ. P. 56(c), Fed. R. Bankr. P. 7056.

4

case, and on which that party will bear the burden of proof at trial."[10]

## IV.  DISCUSSION.

### A.  The Preference Claims.

I will dismiss Counts I and II. The Bankruptcy Code provides that "the trustee may avoid" preferential transfers.[11] Nothing in the Code permits a chapter 7 debtor to exercise this power, even if the trustee elects to close the case without exercising the preference avoidance power.

### B.  Section 522(f) and "Property of the Estate."

A chapter 7 debtor may avoid the "fixing" of certain "judicial liens" (including judgment and attachment liens[12]) "on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under" section 522(b).[13]

Because debtors may only claim exemptions in "property of the estate,"[14] the lien avoidance power is also limited to property of the estate.

The bankruptcy estate includes "all legal or equitable interests of the debtor

---

[10] *Huey v. Honeywell, Inc.*, 82 F.3d 327, 334 (9th Cir. 1996) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).

[11] 11 U.S.C. § 547(b).

[12] 11 U.S.C. § 101(36).

[13] 11 U.S.C. § 522(f).

[14] 11 U.S.C. § 522(b)(1).

5

in property as of the commencement of the case . . ."[15] Such property, "*by whomever held*,"[16] is added to the estate and made available to all creditors in the order of their entitlements.

## C. The Nielsen Trust Property is Property of the Estate.

OneWest and the TMS Trustee argue that the property belongs to the Nielsen Trust, not the Nielsens, and that therefore the Nielsens have no interest in that property which they could exempt. The Nielsens take the opposite position.

I agree with the Nielsens and hold that the property is the Nielsens' property and therefore property of their bankruptcy estate.

Hawaii courts and statutes have never squarely addressed whether self-settled, revocable trusts, also known as "living trusts," are separate entities. When a state court has not addressed an issue, federal courts have a duty to predict how a state court would rule on an issue "'using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.'"[17] Federal courts are not precluded from affording relief simply because a

---

[15] 11 U.S.C. § 541(a)(1).

[16] 11 U.S.C. § 541(a).

[17] *Arandell Corp. v. Xcel Energy, Inc. (In re W. States Wholesale Natural Gas Antitrust Litig.)*, 619 F. Supp. 2d 1062, 1071 (D. Nev. 2008) (quoting *Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 865 (9th Cir. 1996)).

6

state court has not directly addressed a particular issue.[18]

### 1. Under Hawaii law, self-settled revocable trusts are not separate entities.

No party in this adversary proceeding has cited a statute or state appellate court decision discussing the legal status of revocable trusts under Hawaii law. I conclude that a Hawaii court would find that self-settled revocable living trusts are not separate entities and that the trust property belongs to the settlor.

Hawaii has adopted the common law of England "as ascertained by English and American decisions . . . ."[19] The Restatement (Second) of Trusts defines a trust as a "fiduciary relationship with respect to property . . . ."[20] As another authority put it, "[a] trust may be defined as a fiduciary relationship in which one person holds a property interest, subject to an equitable obligation to keep or use that interest for the benefit of another."[21] The settlor creates the trust, and the trustee holds the legal title to the trust property for the benefit of the trust's beneficiary.[22]

---

[18] *Id.* (citing *Orkin v. Taylor*, 487 F.3d 734, 741 (9th Cir. 2007) and *Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd.*, 880 F.2d 176, 186 (9th Cir. 1989)).

[19] Haw. Rev. Stat. § 1-1.

[20] Restatement (Second) of Trusts § 2 (1959). Other types of trusts, such as irrevocable or charitable trusts, might be considered separate legal entities for some purposes, such as the income tax.

[21] Amy Morris Hess, George Gleason Bogert, & George Taylor Bogert, *The Law Of Trusts And Trustees* § 1 (2014).

[22] Restatement (Second) of Trusts § 3.

7

The common law also treats the settlor of a revocable living trust as the owner of the trust res for purposes of creditors' rights.[23] In this respect, trusts are different from corporations and limited liability companies, which are separate legal entities and do hold title to property.[24]

Other persuasive authorities lead to the same result. California law, which Hawaii courts often follow, treats living trusts as estate planning devices and not separate legal entities.[25] "Unlike a corporation, a trust is not a legal entity. . . . 'A probate or trust estate is not a legal entity; it is simply a collection of assets and liabilities.'"[26] Further, a trust does not hold title to the trust res. "Title to trust property is in the trustee, not in the trust.[27] "Legal title to property owned by a trust is held by the trustee, and common law viewed the trustee as the owner of the trust's property."[28] Hawaii's *Encyclopedia of Estate Planning* has a similar view of living trusts. According to that treatise, "it is 'business as usual' concerning the

---

[23] Restatement (Third) of Trusts § 25 (2003) ("[T]he property of [a revocable living] trust is ordinarily treated as though it were owned by the settlor."); *id.* comment a ("In other substantive respects (such as creditors' rights), the property held in a revocable trust is ordinarily to be treated as if it were property of the settlor and not of the beneficiaries.").

[24] Haw. Rev. Stat. § 414-42; Haw. Rev. Stat. § 428-111.

[25] *In re Brock*, 494 B.R. 534, 548 (Bankr. D. Col. 2013) (citing *Galdjie v. Darwish*, 113 Cal. App. 4th 1331, 1344-45 (2003)); *Galdjie v. Darwish*, 113 Cal. App. 4th 1331, 1344 (2003).

[26] *Galdjie v. Darwish*, 113 Cal. App. 4th at 1343 (2003).

[27] *Id.*

[28] *Id.*

8

management and control of the trust assets, and only upon the Settlor's death is the separate legal entity of the trust fully recognized."[29]

The federal district court for this district has also held that, under Hawaii law, the settlor, trustee, and beneficiary of a revocable living trust "effectively owned the property."[30] In the *Amonette* case, an individual filed suit under the Truth in Lending Act. The defendant lender argued that TILA did not apply because the loan was to an "organization," *i.e.*, the plaintiff's revocable living trust which owned the mortgaged property. The district court rejected this contention. Although *Amonette* was decided under the TILA statute, not the Bankruptcy Code, the court's analysis of the revocable living trust under Hawaii law is equally applicable here.

Viewing living trusts not as separate entities, but as will substitutes, is consistent with Hawaii case law holding that debtors may not shield their assets from creditors by putting them in a self-settled trust. For instance, in *Cooke Trust Co. v. Lord*,[31] Hawaii's Supreme Court held that a debtor cannot protect his property by putting it in a self-settled trust, even if it has a spendthrift provision.[32]

---

[29] *Encyclopedia of Estate Planning* 3-8 (Rhonda L. Griswold, et al. eds., 2007).

[30] *Amonette v. IndyMac Bank*, 515 F. Supp. 2d 1176 (D. Haw. 2007).

[31] 41 Haw. 198 (1955).

[32] *Id.* at 202; *see also Security Pacific Bank Washington v. Chang*, 80 F.3d 1412 (9th Cir. 1996).

9

If self-settled trusts were separate entities like LLCs or corporations, the result would be different. The property of a corporation is generally not available to a shareholder or officer's creditors.[33]

### 2. The Nielsens' trust property is property of the estate.

Since the Nielsen Trust is not a separate entity from the Nielsens, the property they contributed to the Nielsen Trust became property of the bankruptcy estate. But even if the living trust is a separate entity, the trust property would still be property of the bankruptcy estate.

The bankruptcy estate broadly includes every legal and equitable interest in property that the Nielsens had at the date of their bankruptcy.[34] Despite the fact that the Nielsens contributed the property to the Nielsen Trust, Mr. and Mrs. Nielsen held all of the rights in that property that one can hold. At the date of bankruptcy, they held legal title as trustees and beneficial title as beneficiaries. They had the absolute right to use the property as they saw fit, to control its disposition, and to revoke or amend the trust. By adding up all of the rights that the Nielsens

---

[33] Haw. Rev. Stat. § 414-42 (Hawaii corporations have the power to "purchase, receive, lease, or otherwise acquire, and *own*, hold, improve, use, and otherwise deal with, real or personal property . . . ." (emphasis added)); *Chung v. Animal Clinic, Inc.*, 636 P.2d 721, 723-24 (Haw. 1981) ("The general rule is that a corporation and its shareholders are to be treated as distinct legal entities. The corporate 'veil' will be pierced and the legal entity of the corporation will be disregarded only where recognition of the corporate fiction would bring about injustice and inequity or when there is evidence that the corporate fiction has been used to perpetrate a fraud or defeat a rightful claim.").

[34] 11 U.S.C. 341(a).

U.S. Bankruptcy Court - Hawaii #14-90044 Dkt # 78 Filed 03/11/15 Page 10 of 21

had in the property, one can see that they had all of the rights that a person can have in property. The only difference is that they had to exercise some of those rights in their capacities as trustees, but that is a pure formality. The Nielsens' bankruptcy estate succeeded to all of those rights.

Including the trust's assets in the Nielsens' bankruptcy estate is consistent with applicable nonbankruptcy law. Under Hawaii law, the creditors of the settlor and trustee of a revocable living trust can recover from the trust's assets. A "settlor cannot create a spendthrift trust in favor of himself good as against either prior or subsequent creditors."[35] Although there is no indication that the Nielsen Trust includes a spendthrift provision, the same logic applies; debtors should not be able to put property out of the reach of their creditors simply by putting the property in a trust, while continuing to enjoy unrestricted use of and control over the property.

> "A man can not put his own property beyond the reach of creditors and at the same time reserve substantial interests or control over it." Under Hawaiʻi law, where the settlor creates a trust where the trustee has absolute discretion to pay the settlor (among others), the settlor's creditors "can reach his interest, and can compel the trustee to pay over so much as in his discretion he is authorized to pay to the settlor." Furthermore, "when a beneficiary of a spendthrift trust is also the settlor of that trust, creditors may reach both income and corpus in satisfaction of either prior or subsequent debts."[36]

---

[35] *Cooke Trust Co. v. Lord*, 41 Haw. 198, 201 (1955); *Security Pacific Bank Washington v. Chang*, 80 F.3d 1412 (9th Cir. 1996).

[36] *Holualoa Aloha, LLC v. Anekona Aloha, LLC*, 129 Haw. 106, 294 P.3d 1092 (Haw. Ct. App. 2013) (citations omitted). The record of this case includes only a short form of the trust agreement, not the full trust agreement, so one can not be certain that the Nielsen Trust is a

11

It would be a non-sequitur to say that an individual's creditors can levy on trust property outside of bankruptcy, but the same property is unavailable to the same creditors in bankruptcy.

### D.    The Effect of the TMS Trustee's Attachment Lien

The TMS Trustee argues that this case is distinguishable from authorities that treat settlors of living trusts as owners of the trust property, because the TMS Trustee obtained and recorded a writ of attachment directed specifically to the Nielsen Trust property. I disagree. The imposition of the attachment lien did not change the character of the Nielsen Trust or of Nielsens' rights in it. The property still belonged to the Nielsens for all relevant purposes. The only difference was that the property arguably became subject to an additional lien, but the Bankruptcy Code permits the avoidance of such liens in the right circumstances.

Further, the TMS Trustee's argument, if accepted, would allow him to have his cake and eat it too. When he moved for the writ of attachment on the Nielsen Trust's property, he argued that "the law is clear that creditors of a settlor-trustee may recover from a revocable trust established by the settlor-trustee."[37] He even relied on the *Amonette* case, a decision which he now contends is not binding and

_____

discretionary trust. In light of standard estate planning practices in Hawaii, however, it would be shocking if the trust were not fully discretionary.

[37] Adv. No. 14-90022, dkt. 18 at 3.

U.S. Bankruptcy Court - Hawaii   #14-90044   Dkt # 78   Filed 03/11/15   Page 12 of 21

inapplicable.[38] The TMS Trustee cannot have it both ways: he cannot argue that he was entitled to an attachment because the property belonged to the Nielsens, but later argue that the Nielsens are not entitled to an exemption because the property did not belong to them.

###  E.  The Cases On Which the Defendants Rely

The TMS Trustee relies on the *Bogetti* decision.[39] The debtors were the settlors and the beneficiaries of a revocable trust which owned real property. They named their son as trustee and retained the power to change the beneficiaries at will and to terminate the trust.[40] The property was apparently the debtors' residence. The bankruptcy court initially held that "because the interest of the debtors as settlors of the trust in trust assets could be reached by their creditors, those assets are also subject to the reach of the bankruptcy trustee," and that "because the property and other trust assets are subject to claims of creditors and the trustee, the debtors, as settlors of the trust, are entitled to claim exemptions in the trust property."[41] The BAP and the Ninth Circuit *affirmed* these rulings.[42] So far,

---

[38] *Id.*, dkt. 4 at 9.

[39] *In re Bogetti*, 349 B.R. 14 (Bankr. E.D. Cal. 2006)

[40] *Bogetti v. Bank of America (In re Bogetti)*, 73 F. Appx. 266 (9th Cir. 2003).

[41] *Id.* at 16.

[42] *Id.* at 16-17.

13

U.S. Bankruptcy Court - Hawaii  #14-90044  Dkt # 78  Filed  03/11/15  Page 13 of 21

the *Bogetti* decision supports the Nielsens' position, and I agree with it.

The debtors in *Bogetti* then moved, just as the Nielsens have done, to avoid a judgment and attachment lien on the property under section 522. The bankruptcy court denied this motion, reasoning that the property still belonged to the trust, not the debtors, and that one cannot claim an exemption in another's property.

I decline to follow *Bogetti* for three reasons.

First, I disagree with *Bogetti's* interpretation of California law. Another bankruptcy court described the relevant law of California as follows:

> In California, an inter vivos revocable trust is recognized as "a probate avoidance device." As such, it "is not a legal entity; it is simply a collection of assets and liabilities." Furthermore, "[t]here is no distinction in California law between property owned by the revocable trust and property owned by the settlor of such a revocable trust during the lifetime of the settlor." As a consequence, "[p]roperty transferred to, or held in, a revocable inter vivos trust is . . . deemed the property of the settlor and is reachable by the creditors of the settlor." In sum, when property is held in an inter vivos revocable trust, "the settlor and lifetime beneficiary has the equivalent of full ownership of the property."[43]

*Bogetti* rests on the view that a trust is a separate entity that owns the property contributed to it. As is explained above, this view is incorrect. Once one realizes

---

[43] *In re Brock*, 494 B.R. 534, 547 (Bankr. D. Colo. 2013) (citations omitted). Granted, this is a Colorado court's description of California law, while *Bogetti* was decided by a California bankruptcy court. But the California state court decisions cited by *Brock* are much more recent and on point than the lone decision cited by *Bogetti* and are also consistent with the common law. *See* Hess et al., *supra* n. 21, at § 1061 ("When the settlor [of a revocable living trust] is the trustee, then he/she will have the same control over his/her assets in the same manner as if the trust did not exist.").

U.S. Bankruptcy Court - Hawaii   #14-90044   Dkt # 78   Filed 03/11/15   Page 14 of 21

that the property of a self-settled revocable living trust is really property of the settlor, the conclusion inescapably follows that the property belongs to the settlor's bankruptcy estate and is subject to the settlor's exemption rights.

Second, assuming *Bogetti* is correct under California law, it would not be correct under Hawaii law. The court's holding rests on the premise that the trust, not the debtors, owned the property at the date of bankruptcy. But under Hawaii law, the person who simultaneously is the settlor, trustee, and beneficiary of a trust is the owner of the trust *res*.

Third, and perhaps most importantly, the text of the Bankruptcy Code does not support the *Bogetti* court's conclusion that debtors can exempt property held by revocable living trusts but not avoid liens that impair that exemption.

The BAP's unpublished decision in *Eleiwa*[44] is distinguishable. In that case, the debtor fraudulently transferred two pieces of property. The chapter 7 trustee avoided the transfers. The debtor claimed a homestead exemption in both properties. The bankruptcy court disallowed the exemptions on multiple grounds, and the BAP affirmed. The court noted that, even after the trustee avoided the transfer, title to the property reverted to a trust of which the debtor was a co-trustee. The BAP said that, "*without any evidence showing that [the debtor] was the trustor and that the trust was revocable*, the bankruptcy court appropriately found that [the

---

[44] *Eleiwa v. Whitmore (In re Eleiwa)*, 2103 WL 2443086 (B.A.P. 9th Cir. June 5, 2013).

U.S. Bankruptcy Court - Hawaii   #14-90044   Dkt # 78   Filed  03/11/15   Page 15 of 21

debtor] did not own the properties upon [the trustee's] recovery."[45] In this case, the Nielsens are the settlors of their trust and the trust is revocable. (The BAP also affirmed the bankruptcy court's determination that the debtor was not entitled to a homestead exemption because she did not reside in either of the properties. This is an independently sufficient basis for the court's decision which does not apply to this case.)

For similar reasons, the *George* decision[46] is inapplicable. The debtor placed her Braintree home in a revocable trust, of which she was trustee and her children were beneficiaries. A contractor filed suit for unpaid amounts owed due to a kitchen renovation. The debtor and her husband filed a petition under chapter XIII of the old Bankruptcy Act.[47] The debtor sought dismissal of the contractor's suit, arguing that the claim was discharged. The First Circuit disagreed, holding that the debtor "does not contest the fact that, throughout the length of the chapter XIII proceeding, equitable title to the Braintree property resided in her children, the trust beneficiaries. In these circumstances, we agree that the real estate did not constitute "property" of the [debtor] within the meaning of the Bankruptcy Act."[48]

---

[45] *Id*. at *3 (emphasis added).

[46] *George v. Kitchens by Rice Bros.*, 665 F.2d 7, 8 (1st Cir. 1981).

[47] I assume, without deciding, that the relevant provisions of the Bankruptcy Act and the Bankruptcy Code are the same in substance.

[48] *Id*. at 8.

U.S. Bankruptcy Court - Hawaii  #14-90044   Dkt # 78   Filed 03/11/15   Page 16 of 21

In this case, unlike *George*, the Nielsens are apparently the lifetime beneficiaries of the trust. The court went on to say that, "the fact that plaintiff reserved the power to revoke the trust does not call for a different result; *in contrast to the situation in some states*, such a power of revocation under Massachusetts law is not considered property and cannot be reached by creditors."[49] The situation is otherwise in Hawaii, where revocable trust property is fully available to creditors and is the debtor's property for all relevant purposes.

The *Cowles* decision,[50] cited by the TMS Trustee, actually supports the Nielsens' argument. The issue was whether the value of property held in a revocable trust had to be considered in calculating the amount paid under a chapter 13 plan. The recovery to creditors under a chapter 13 plan must be at least as much as the recovery they would receive in a hypothetical chapter 7 liquidation.[51] The court ruled that, because the trust property would have been liquidated in a chapter 7 case, the value of that property had to be accounted for under the chapter 13 plan. (The court also implicitly held (without so stating) that intervening Massachusetts state court decisions had rendered *George* untenable.)

---

[49] *Id.* (emphasis added).

[50] *In re Cowles*, 143 B.R. 5 (Bankr. D. Mass. 1992).

[51] 11 U.S.C. § 1325(a)(4).

17

### F.     The Trustee's Equitable Arguments.

The TMS Trustee contends that the Nielsens are not entitled to a discharge due to their alleged misconduct and that for the same reasons "they should not be permitted to avail themselves of other sections of the Code."[52]

I disagree. First, some of the facts on which the TMS Trustee relies (such as the Nielsens' failure to file and pay taxes) would not support a wholesale denial of the discharge or entitle creditors (other than the taxing authorities) to any remedy. Second, even if the TMS Trustee is successful in his objection to the Nielsens' discharge,[53] the Nielsens would still be entitled to their exemptions.[54] Finally, the Supreme Court has recently held, in a slightly different context, that equitable considerations cannot override a debtor's statutory entitlement to exemptions.[55]

### G.     The Exemption Claim and the Bed and Breakfast Inn.

The TMS Trustee and OneWest object to the Nielsens' exemption claim on the ground that one of the two buildings on the property is used as an income-producing bed and breakfast inn. I disagree, but not for the reasons advanced by the Nielsens.

------

[52] Dkt. 66 at 7.

[53] Adv. No. 14-90065.

[54] *See* 11 U.S.C. § 522(c).

[55] *Law v. Siegel*, 134 S.Ct. 1188 (2014).

18

The Nielsens argue that state law defines property interests in bankruptcy cases. So far, so good. But the Nielsens go on to assert that a homestead exemption is a property right and that state law also defines that right, even if a debtor chooses the federal homestead exemption. The Nielsens offer no authority for this proposition and it is is not correct. There is no reason to think that, when Congress enacted a uniform set of federal exemptions, it intended to incorporate unspecified portions of the states' non-uniform exemption laws.

Regardless, the Nielsens' property is "real property . . . that the debtor[s] . . . [use] as a residence . . ." and which is therefore covered by the federal homestead exemption.[56] If Congress meant to limit the exemption to property that the debtors use *exclusively* as a residence, Congress could and would have said so.[57]

## H.    The Extent of Impairment.

There remains the question of the extent to which the liens of the TMS Trustee and OneWest impair the Nielsens' exemptions. This turns largely on the value of the property. The TMS Trustee and OneWest argue that the court should defer consideration of the value of the property until they have hired an appraiser. Although it is a close call, I will grant this request. The TMS Trustee's decision to

---

[56] 11 U.S.C. § 522(d)(1).

[57] The result might be different if the two buildings were on severable parcels, *see* 4-522 *Collier on Bankruptcy* P 522.09[1], n. 21 (16th ed. 2014), but the record does not indicate the property is divided or readily divisible.

U.S. Bankruptcy Court - Hawaii   #14-90044   Dkt # 78   Filed 03/11/15   Page 19 of 21

defer hiring an appraiser in order to save money would usually not be a sufficient reason to delay the disposition of a case. In contrast, the Nielsens have obtained an appraisal report. The TMS Trustee and OneWest criticize the appraiser's methods, but their criticisms are not evidence, let alone expert opinion evidence. The only bit of countervailing "evidence" they offer is a Zillow valuation, which is not particularly persuasive[58] and may not even be admissible. Nevertheless, it is best to allow the objectors a short period to obtain an appraisal report to see whether it might change the outcome.

## V.    CONCLUSION.

Counts one and two of the complaint are dismissed, and the TMS Trustee's OneWest's motions are granted to that extent. The Nielsens are entitled to claim the federal homestead exemption in the property; their motion is granted, and the TMS Trustee's and OneWest's motions are denied, to that extent. The courtroom

---

[58] According to the Zillow website,

The Zestimate® home valuation is Zillow's estimated market value, computed using a proprietary formula. It is not an appraisal. It is a starting point in determining a home's value. The Zestimate is calculated from public and user submitted data; your real estate agent or appraiser physically inspects the home and takes special features, location, and market conditions into account. We encourage buyers, sellers, and homeowners to supplement Zillow's information by doing other research such as:

> Getting a comparative market analysis (CMA) from a real estate agent
> Getting an appraisal from a professional appraiser
> Visiting the house (whenever possible)

www.zillow.com/zestimate (last visited March 4, 2015).

U.S. Bankruptcy Court - Hawaii   #14-90044   Dkt # 78   Filed  03/11/15   Page 20 of 21

deputy shall arrange a scheduling conference to set a date for an evidentiary hearing at which the court will determine the extent to which the defendants' liens impair the Nielsens' exemption.

**END OF MEMORANDUM**

U.S. Bankruptcy Court - Hawaii   #14-90044   Dkt # 78   Filed  03/11/15   Page 21 of 21